1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  HERNANDEZ et al.,                          CASE NO. C12-178 RSM

11              Plaintiffs,                    ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
12         v.                                  MOTION FOR SUMMARY
                                               JUDGMENT
13  KUNKLE et al.,

14              Defendants.

15

16                        **I. INTRODUCTION**

17         This matter comes before the Court upon Defendants' motion for summary judgment.

18  Dkt. # 12.  Plaintiffs Linda and Alfred Hernandez, now proceeding *pro se*, brought suit against

19  Bothell Police Sgt. Michael Strong, and Officers Shawn Kunkle, Charles Elrod, and Darren

20  Timpe for federal civil rights violations under 42 U.S.C. § 1983 and state law torts arising from

21  the high-risk stop of the Hernandez's minivan on January 30, 2010.  For the reasons below, the

22  Court Grants summary judgment in part and Denies it in part.

23

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 1

## II. BACKGROUND

Until the early morning hours of January 30, 2010, Sara Reyna lived with her mother Linda Hernandez, her step-father Alfred Hernandez, and her biological father Rueben Reyna in the same home in Mill Creek, Washington.  At some point during that night, Sara left the house to move in with her boyfriend Matthew Klein after arguing with her mother.  Mrs. Hernandez awoke in the middle of the night to find her daughter missing.  The family deduced that Sarah might be at Matthew's home and Rueben drove over to Matthew's to see if Sara was there.  Reuben did indeed find Sara and called Mrs. Hernandez on his cell phone to let her know that Sarah was safe.  Mrs. Hernandez, through Rueben, tried to convince Sara to come back home.  Sara refused.

Mrs. Hernandez allegedly made statements to Rueben that were overheard by Matthew and Sara.  Matthew stated that he heard Mrs. Hernandez threaten to break his car and home windows with a hammer and break her way into his house to get Sara.  He overheard Mrs. Hernandez say that he (Matthew) would have to shoot her (Mrs. Hernandez) or else she would be arrested.  Matthew then called 911 to report the threats and requested that officers be dispatched as Mrs. Hernandez and her husband were on their way to Matthew's home.  Dispatcher Leah Wright processed Matthew's call and alerted the Bothell Police Department about the situation.  Ms. Wright misheard or misunderstood Matthew's statement about "shooting" and typed the words that were later read to the officers as Mrs. Hernandez had "threatened to shoot the girlfriend."  Dkt. # 15, p. 2.

At approximately 5:15 a.m., Sgt. Strong and Officers Kunkle and Timpe located the Hernandez's minivan parked on a dead-end street near Matthew's home.  They proceeded with a "high-risk stop" wherein Mr. and Mrs. Hernandez were ordered to exit the vehicle with their

1   hands up and they were placed in handcuffs.  The facts surrounding the Defendants' conduct

2   during the investigative stop and seizure are disputed by the parties.

3        Plaintiffs recall that they were ordered out of their vehicle at gun point.  The police

4   ordered them to keep their hands above their heads and they were ordered to lay face-down on

5   the ground.  Mr. and Mrs. Hernandez were in their late-fifties and each suffered from numerous

6   chronic health problems.  The Plaintiffs tried to explain their medical conditions to the officers.

7   Mrs. Hernandez was unable to lower herself to the ground so she belly-flopped forward to

8   comply with the officers demands.  Plaintiffs recall that they were yelled at by the officers and

9   that they feared for their lives.  Mrs. Hernandez states that a rifle or machine gun was pointed at

10  her temple while she lay on the ground, after her hands were cuffed behind her back.  She states

11  that an officer threatened to taze her unless she stood up.  She told the officers that she was

12  unable to get off the ground on her own.  The officers roughly pulled her to her feet.  Mrs.

13  Hernandez states that she complied with all of the officers' requests and did not resist them.

14       The officers state that they were not physical with Mrs. Hernandez and treated her gently.

15  They state that she was not compliant with their requests.  Officer Kunkle states that while he

16  had his firearm out, he never pointed it at either Mr. or Mrs. Hernandez.

17       A search of the vehicle revealed a hammer, but no gun.  At least one officer knew about

18  Mrs. Hernandez's threat to damage property with a hammer.  The officers then arrested Mrs.

19  Hernandez and released Mr. Hernandez.  Mrs. Hernandez was taken to the Bothell jail and

20  placed in a holding cell.  While in the jail, Mrs. Hernandez alleges that male police officers

21  watched her urinate via video monitor while she used the restroom.  She was subsequently

22  released and charged with harassment, which was reduced to disorderly conduct.  Plaintiffs filed

23  suit in Snohomish County Superior Court in January 2012.  Defendants removed to this Court on

24

1   the basis of federal question jurisdiction.  Plaintiffs have been unable to secure counsel after

2   removal of the action to federal court and have been proceeding *pro se* since February 2012.

3   Defendants filed this motion for summary judgment to dismiss the suit in its entirety on August

4   9, 2012. Dkt. # 12.  Plaintiffs later moved to continue the trial date and requested additional time

5   to respond to Defendants' motion. Dkt. # 20.  Finding good cause, the Court permitted Plaintiffs

6   additional time to respond to the motion and set trial for May 20, 2013. Dkt. # 22.

7                                            **III. DISCUSSION**

8   **A.  Summary Judgment Standard**

9            Summary judgment is proper where "the pleadings, depositions, answers to

10  interrogatories, and admissions on file, together with affidavits, if any show that there is no

11  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

12  of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The

13  court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v.*

14  *O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79

15  (1994). The moving party bears the burden of demonstrating the absence of a genuine issue of

16  material fact for trial. *See Anderson*, 477 U.S. at 257.

17           Genuine factual issues exist where the evidence suggests that a reasonable jury could find

18  in favor of the non-moving party at trial. *See id.* at 248. On summary judgment, the court does

19  not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a

20  genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing

21  *O'Melveny & Myers*, 969 F.2d at 747).  Furthermore, conclusory or speculative testimony is

22  insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v.*

23  *Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995).  Similarly, hearsay evidence

24

1  may not be considered in deciding whether material facts are at issue in summary judgment

2  motions. *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980).

3  **B.  § 1983 Civil Rights Violations**

4  　　　　Plaintiffs assert claims against the individually-named officers for excessive force,

5  invasion of privacy, and failure to intervene in violation of their civil rights under 42 U.S.C. §

6  1983.  To prevail, Plaintiffs must prove that Defendants acted under color of state law and

7  deprived them of a constitutionally-protected right. *Id.*; *Jensen v. City of Oxnard*, 145 F.3d 1078,

8  1082 (9th Cir. 1998) (citing *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989)).  Because no

9  party disputes that the officers acted under color of state law, Defendants must demonstrate that

10  Plaintiffs' allegations of constitutional violations raise no material issue of fact.  Each claim is

11  addressed in turn.[1]

12  　　　1.  <u>Fourth Amendment Violations</u>

13  　　　　Although Plaintiffs do not challenge the lawfulness of either the investigatory stop or

14  arrest under the Fourth Amendment in their complaint, the Court reviews briefly whether the

15  investigatory stop and Mrs. Hernandez's arrest were lawful before turning to the Hernandez's

16  excessive force claim.

17  　　　　*a.  Investigatory (Terry) Stop*

18  　　　　Defendants' motion for summary judgment argues that they had reasonable suspicion to

19  conduct a high-risk investigative stop when they located the Hernandez's minivan near Mr.

20  Klein's property.  Plaintiffs, however, contend that Mrs. Hernandez never threatened Mr. Klein.

21  _____

22  　　　　[1] Defendants object to several portions of the responsive material provided by Plaintiffs
in the response to the motion for summary judgment. Dkt. # 28, pp. 8-10. The Court agrees that

23  much of the material provided is inadmissible. In considering Defendants' motion, although the
Court read all of the materials in the record, it relied primarily on Mrs. Hernandez's affidavit

24  detailing her personal recollection of the events surrounding the Hernandez's seizure.

1   The United States Supreme Court has held that an investigative stop, effectuated without a

2   warrant, is not a violation of the Fourth Amendment so long as the stop was reasonable. *See*

3   *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  To determine reasonableness under the Fourth

4   Amendment, courts must consider (1) whether an officer's actions in seizing and searching the

5   individual were justified at their inception, and (2) whether those actions were reasonably related

6   in scope to the events that justified invading the individual's personal security. *Id.* at 19-20.  An

7   officer's initial detention is justified if the officer has an articulable and reasonable suspicion that

8   the individual may be engaged in criminal activity.

9           Here, although Mrs. Hernandez contests whether the threats were made by her to Mr.

10  Klein, the evidentiary record conclusively shows that Klein called 911, relayed to Dispatcher

11  Wright that Mrs. Hernandez had threatened him, and that Dispatcher Wright communicated the

12  information to the Bothell Police. See Dkt. # 15, p. 6.  The officers, acting under the mistaken

13  but reasonable belief that Mrs. Hernandez threatened to use a gun, located a dark minivan

14  matching the description provide by Dispatcher Wright near Mr. Klein's home.  At that point, the

15  Officers had a reasonable and articulable suspicion that Mrs. Hernandez may be engaged in

16  criminal activity. *Id.* at pp. 2-4.  Thus, the Officers were within their authority to conduct an

17  investigative stop.  Plaintiffs offer no evidence rebutting the reasonableness of the officers'

18  actions in conducting the initial stop.

19           b.   *Lawfulness of Arrest*

20           When police have reasonable suspicion to conduct a Terry stop, "founded suspicion to

21  stop for an investigatory detention may ripen into probable cause to arrest through the occurrence

22  of facts or incidents after the stop." *United States v. Greene*, 783 F.2d 1364, 1368 (9th Cir. 1986)

23  (citing *United States v. Medina-Gasca*, 739 F.2d 1451, 1453 (9th Cir. 1984)).  Washington law

24  authorizes police officers to execute warrantless arrests if there is probable cause to believe the

1    person is committing, or has committed a felony. RCW 10.31.100.  Otherwise, an officer has

2    probable cause to support a warrantless arrest when a suspect commits a misdemeanor or gross

3    misdemeanor in the officer's presence. *Id.*

4          Defendants contend that under the facts, the officers' reasonable suspicion to conduct the

5    stop ripened into probable cause to arrest when they found the hammer in the Hernandez's

6    minivan.  Defendants then proceeded to execute a warrantless arrest of Mrs. Hernandez for

7    harassment.  Under RCW 10.31.100(1), "[a]ny police officer having probable cause to believe

8    that a person has committed a misdemeanor or gross misdemeanor, involving physical threats of

9    harm or threats of harm to any person or property . . . shall have the authority to arrest the

10   person."  Harassment, a gross misdemeanor under RCW 9A.46.020, occurs when "without

11   lawful authority, the person knowingly threatens: (i) To cause bodily injury immediately or in

12   the future to the person threatened or to any other person; or (ii) To cause physical damage to the

13   property of a person other than the actor . . . ."  Here, Sgt. Strong learned, during the Terry stop,

14   about Mrs. Hernandez's threats to damage Klein's property with a hammer. Dkt. # 13, p. 2.  Sgt.

15   Strong was at the scene during the search that revealed the hammer. *See id.*  Once the hammer

16   was found, the officers had probable cause to believe that Mrs. Hernandez committed

17   harassment.  They then had the authority to execute a warrantless arrest pursuant to RCW

18   10.31.100(1).

19          *c.  Excessive Force*

20          Despite the officers' lawful investigatory stop and arrest, Plaintiffs' contend that the

21   Defendants used excessive force during the seizure in violation of the Fourth Amendment.

22   Courts evaluate Fourth Amendment excessive force claims under an objective reasonableness

23   standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007).  To determine whether a Fourth Amendment

24   violation occurred, the court must balance "the extent of the intrusion on the individual's Fourth

Amendment rights against the government's interest to determine whether the officer's conduct was objectively reasonable on the totality of the circumstances."[2] *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). The balancing inquiry requires three steps. *Id.* First, the court assesses the severity of the intrusion by evaluating "the type and amount of force inflicted." *Id.* (quoting *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003)). Second, the court determines the relevant governmental interest by (1) evaluating the severity of the crime, (2) evaluating whether the suspect posed an immediate threat to officer or public safety, and (3) evaluating whether the suspect resisted arrest or attempted to flee. *Id.*; *Graham*, 490 U.S. at 396. Third, the court weighs the force used against the need for such force to determine whether the "force used was greater than [] reasonable under the circumstances." *Espinosa*, 598 F.3d at 537 (internal quotation omitted). In police misconduct cases, the Ninth Circuit cautions that summary judgment should be used sparingly because the reasonableness of an officer's conduct often turns on credibility determinations that are the province of the fact-finder. *See id*; *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

Plaintiffs contend that an officer pointed a gun towards Mrs. Hernandez's temple while she was handcuffed and lying face-down on the ground. Pointing a loaded weapon at a suspect may constitute excessive force where the threat posed by the suspect is low. *See Espinosa*, 598 F.3d at 538; *Hopkins v. Bonvicino*, 573 F.3d 752, 776-77 (9th Cir. 2009) (affirming denial of summary judgment on excessive force claim where suspect was not a safety threat, did not have

---

[2] Both parties failed to analyze whether the officers' use of force was reasonable under the balancing test articulated in *Graham*, 490 U.S. at 396. Defendants cite the *Graham* factors but do not apply them to the particular facts of the seizure. *See* Dkt. # 12, pp. 12-13. The Court engages in this analysis without the benefit of any argument by the parties.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

1   a gun, and the officers outnumbered him); *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir.

2   2007) (stating that "the pointing of a gun at someone may constitute excessive force, even if it

3   does not cause physical injury"); *Robinson v. Solano County*, 278 F.3d 1007, 1014-15 (9th Cir.

4   2002) (holding that the officers' use of a drawn gun at close range when they pointed the gun at

5   the head of an unarmed misdemeanor suspect is actionable) (en banc).

6         Here, the officers contend that they were "very patient" with Mrs. Hernandez during the

7   seizure. Dkt. # 13, p. 3.  They were not "physical" with her. Dkt. # 14, p. 3.  They also state that

8   Mrs. Hernandez was "not compliant" with their demands. *Id.*  Officer Kunkle states that he drew

9   his weapon, but that he kept it "in the 'low-ready' position. i.e., pointed to the ground, not at Mr.

10   and Mrs. Hernandez." Dkt. # 16, p. 3.  In stark contrast to the officers' declarations about the

11   amount of force used during Mrs. Hernandez's arrest, Ms. Hernandez recounts the events as

12   follows in her October 26, 2012 affidavit:

> In the dark, I had to walk backwards towards the police . . . . The police
> yelled at me to get face down on the ground and I told them that I couldn't
> because of my health. I cannot lower myself to the ground without great
> difficulty and with the speed that I knew they wanted me to comply. I told
> them I was handicapped, please don't hurt me. . . . I remember I was on
> the ground with my face in the dirt and I was crying. A voice behind me,
> to my left was screaming "where's the gun!"! I was handcuffed behind my
> back, face down in the dirt and the pain was horrible. I looked up to my
> right and saw that a policeman had a very large beefy huge rifle looking
> gun or machine gun at my right temple forehead and another voice was
> yelling at me from the left to get up or he would taze me! I cried and told
> them that I couldn't get up that I wasn't able. . . . I don't know if it was 2
> or 3 police officers that pulled me to a standing position . . . they lifted me
> hard and quick. . . . I told them over and over I was old and in pain.

Dkt. # 23, p. 40. In sum, Mrs. Hernandez claims she was threatened with lethal force when she

presented little or no risk to the officers as she was unarmed and physically unable to push

herself from the ground.  The threat of lethal force is a high level of force. *Espinosa*, 598 F.3d at

537.

1    Defendants cite *United States v. Taylor*, 716 F.2d 701 (9th Cir. 1993), to support their

2    argument that the "use of drawn guns, handcuffing, lying prone on the ground and frisking for

3    weapons are lawful police protective measures in high risk investigative stops." Dkt. # 12, p. 8.

4    In *Taylor*, the court held that the officers' armed approach was justified as a Terry stop.  There,

5    while actively investigating a methamphetamine manufacturing operation, the officers stopped

6    defendants at gun point based on prior experience that indicated that at least one of the

7    defendants was likely to be dangerous. *Id.* at 708.  The facts here are somewhat different.

8    Plaintiffs were in their late fifties, in poor health, and had no criminal history.  The minivan was

9    parked on a dead-end street.  Neither of them carried a weapon.  Although the Court finds that

10   the officers had reasonable suspicion necessary to conduct a lawful Terry stop because there was

11   a potential threat to persons and property, whether the amount of force used by the officers in

12   effectuating the seizure was reasonable is an entirely different question.

13   Defendants also cite *McKinney v. City of Tukwila*, 103 Wash. App. 391 (2000) to support

14   the same argument.  However, there the Washington Court of Appeals decided that the officers'

15   high-risk stop was not unreasonable under the clearly established law prong of the qualified

16   immunity analysis. *Id.* at 405.  That court did not cite any of the recent Ninth Circuit decisions

17   discussed here to determine that employing the threat of lethal force when little threat exists may

18   be unreasonable under the circumstances.

19   Having found that the severity of the intrusion upon Mrs. Hernandez was great, the Court

20   next considers the government's countervailing interest by evaluating whether the suspect posed

21   an immediate threat to the officers; the severity of the crime; and whether the suspect resisted or

22   attempted to evade arrest. *Graham*, 490 U.S. at 396.  The first and most significant factor is

23   whether Mrs. Hernandez posed an immediate threat to the officers. *See Chew v. Gates*, 27 F.3d

24

1432, 1441 (9th Cir. 1994). Here, there is no evidence in the record showing that Mrs.

Hernandez was armed or physically capable of employing force against the officers at any time.

This factor favors Plaintiffs.

Second, the crime for which the officers had probable cause to arrest was harassment.

Harassment, a gross misdemeanor under Washington law, may justify the use of some force.

The officers were probably justified in using some amount of force in seizing and arresting Mrs.

Hernandez, but it is unlikely that the threat of lethal force was necessary to subdue Plaintiffs. As

for the third factor, there is no question that Mrs. Hernandez did not try to evade arrest by flight.

Additionally, although the officers state that she was "not compliant," Mrs. Hernandez states that

she tried to tell the officers about her medical conditions, which prevented her from complying

with their demands quickly. Plaintiffs contend that they complied with the officers' demands in

all other respects. Taking the evidence in the light most favorable to Plaintiffs, a jury could find

that it was unreasonable to threaten Mrs. Hernandez with a lethal weapon pointed at her head. A

jury could find the officers' use of the threat of lethal force unreasonable because Mrs.

Hernandez neither posed a credible immediate threat to the officers, nor did she try to resist or

flee from arrest. Under these facts, the Court cannot say that the officers' actions were

reasonable under the circumstances. Accordingly, summary judgment on Plaintiffs' excessive

force claim is not warranted at this time.

### d.  Duty to Intervene

Plaintiffs contend that Defendants had a duty to intervene when their constitutional rights

were violated in the officers' presence. A police officer may be held liable under § 1983 for

failing to intervene if: (1) she knows that the suspect's constitutional rights are being violated by

another officer; (2) she had a reasonable opportunity to prevent the violation; and (3) she chooses

not to act. *Randall v. Prince George's County, Md.*, 302 F.3d 188, 204 (4th Cir. 2002). Here,

1   whether the officers failed to intervene when they knew the Hernandez's civil rights were

2   violated requires a preliminary determination that the Hernandez's civil rights were violated

3   during the seizure.  As discussed above, material issues of fact exist concerning whether the

4   officers' use of force in effectuating the seizure was a violation of Plaintiffs' civil rights.

5   Therefore, the Court cannot make a determination at this time about whether the officers had a

6   duty to intervene.  Accordingly, summary judgment is Denied on this claim.

7       2.  Eighth Amendment Violation

8           Plaintiffs' allege that Mrs. Hernandez's Eight Amendment right to privacy was violated

9   when the male officers watched her urinate via video camera while in the police station. Dkt. # 2,

10  ¶ 24.  Defendants offer two declarations to contest this claim.  First, Deputy Chief Henry Simon

11  states that the video cameras in the holding cells have stickers placed on the lens that prevent

12  viewing of the toilet area in the holding cells. Dkt. # 17, p. 2.  He provides a picture of the

13  camera in holding cell five, the holding cell that Mrs. Hernandez was placed in, to show that the

14  camera had stickers to obscure view of the toilet. *Id.*   Second, in response to Mrs. Hernandez's

15  statement that she used the restroom near the booking area, not the holding cell, Deputy Chief

16  Simon states that the booking area restroom has no video camera or monitor device whereby

17  someone could be watched by video. Dkt. # 27, p. 2.  Plaintiffs offer no evidence to rebut Deputy

18  Chief Simon's declarations.  The conclusory statement that Mrs. Hernandez was watched by

19  video monitor by one or more Bothell police officers does not raise a material issue of fact.

20  Accordingly, the Court Grants summary judgment on this claim.

21  **C. Qualified Immunity Under § 1983**

22          Defendants contend that even if they were mistaken about the amount of force necessary

23  to effectuate Plaintiffs' seizure, they are immune from suit under the doctrine of qualified

24

1   immunity.  Qualified immunity protects law enforcement officers in § 1983 actions when (1) the

2   officer's conduct did not violate a constitutionally protected right, or (2) the right was not clearly

3   established at the time of the alleged conduct. *See Saucier v. Kats*, 533 U.S. 194, 201 (2001).

4   The "clearly established" prong is met when "the contours of the right [are] sufficiently clear that

5   a reasonable official would understand that what he is doing violates that right." *Anderson v.*

6   *Creighton*, 483 U.S. 635, 640 (1987).  In addition, the clearly established inquiry must focus on

7   the particularized context of the case; the court must do more than consider broadly construed

8   constitutional claims in a general sense. *See id.*; *see also Kelley v. Borg*, 60 F.3d 664, 667 (9th

9   Cir. 1995).

10          Above, the Court found that material issues of fact exist with respect to the

11  reasonableness of the officers' use of force during the Hernandez's seizure and arrest.  The Court

12  recognizes that the presence of disputed facts, alone, does not provide a sufficient basis for

13  denying summary judgment on the issue of qualified immunity. *See Saucier v. Kats*, 533 U.S.

14  194, 200 (2001).  However, "unresolved issues of fact are also material to a proper determination

15  of the reasonableness of the officers' belief in the legality of their actions." *Espinosa*, 598 F.3d at

16  532.  The Fourth Amendment right to be free from unreasonable seizure and the use of excessive

17  force is well defined.  And, in a "particularized" sense, the Ninth Circuit has held that pointing a

18  loaded weapon at a suspect can constitute excessive force when the suspect presents little risk.

19  *See, e.g.*, *Espinosa*, 598 F.3d at 537-38 (holding defendants failed to show that there were no

20  issues of material fact concerning the reasonableness of their actions when they entered with

21  drawn weapons where the threat level was low).  Moreover, the contours of the right have been

22  clearly established in the Ninth Circuit since at least 2002. *See Robinson*, 278 F.3d at 1015.

23  Taking the evidence in the light most favorable to the Plaintiffs, the Court could conclude that

24

1    the force used against the Plaintiffs was excessive and in violation of clearly established Ninth

2    Circuit precedent.  Because the determination of qualified immunity requires an inquiry into

3    whether reasonable officers could have believed their conduct lawful under the particular

4    circumstances, the Court cannot resolve the legal question of qualified immunity until after the

5    jury resolves the factual issues surrounding the officers' use of force against the Plaintiffs. *See*

6    *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

7    **D.  State Law Claims**

8         Plaintiffs assert state law claims for assault, battery, invasion of privacy, intentional

9    infliction of emotional distress/outrage, negligent infliction of emotional distress, and negligence

10   against the individual officers. These claims are addressed in turn.

11        1.  Assault  and Battery

12        Plaintiffs make state law claims for assault and battery.  The Court denied summary

13   judgment for the excessive force claim because material issues of fact exist as to whether the

14   officers employed a reasonable amount of force in effectuating Plaintiffs' seizure.  The officers

15   assert state qualified immunity for immunization from the state law claims alleged by Plaintiffs.

16   However, state qualified immunity is not available for "claims of assault and battery arising out

17   of the use of excessive force to effectuate an arrest," where the reasonableness of the officers'

18   conduct is at issue. *Staats v. Brown*, 991 P.2d 615, 627-28 (2000) (en banc).  Thus, the Court

19   declines to dismiss these claims.

20        2.  Invasion of Privacy

21        Plaintiffs contend that Defendants committed the tort of "intrusion upon seclusion." As

22   this claim relates to the contention that Defendants watched Mrs. Hernandez urinate via video at

23   the police station, for the reasons stated above, Plaintiffs offer no evidence to demonstrate a

24   material issue of fact on this claim. Therefore, summary judgment is Granted.

3.   Intentional Infliction of Emotional Distress/Outrage

    To establish a claim for outrage under Washington law, a plaintiff must show "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional distress." *Birklid v. Boeing Co.*, 904 P.2d 278, 286 (1995).  The officers' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 530 P.2d 291, 294 (1975). Here, the Court cannot determine whether the officers' conduct in effectuating Plaintiffs' seizure was reasonable under the circumstances, nor can it determine that the officers' conduct was not extreme and outrageous as a matter of law. *See Seaman v. Karr*, 59 P.3d 701, 710-11 (Wash. Ct. App. 2002) (reversing dismissal of outrage claim where plaintiffs repeatedly told officers about serious health conditions and officers continued to use rough detention techniques). Accordingly, the Court declines to grant summary judgment on this claim at this time.

4.   Negligent Infliction of Emotional Distress and Negligence

    Plaintiffs assert claims for negligent infliction of emotional distress and negligence. "As a general rule, law enforcement activities are not reachable in negligence." *Keates v. City of Vancouver*, 869 P.2d 88, 93 (Wash. Ct. App. 1994).  And in negligence actions, the threshold question is whether defendant owed plaintiff a duty. *Id.* at 92.  Under the public duty doctrine, "there is no liability for a public official's negligent conduct unless it is shown that 'the duty breached was owed to the injured person as an individual'" and not just the public at large. *O'Brien v. City of Tacoma*, C04-5458FDB, 2005 WL 2045882 (W.D. Wash. Aug. 24, 2005) *aff'd*, 247 F. App'x 58 (9th Cir. 2007) (quoting *Torres v. City of Anacortes*, 981 P.2d 891 (Wash. Ct. App. 1999)).  Courts recognize four exceptions to the public duty doctrine: (1) legislative intent, (2) failure to enforce when there is actual knowledge of a statutory violation, (3) failure to

exercise reasonable care when coming to the aid of a particular plaintiff, and (4) where the injured plaintiff has a special relationship entailing a separate duty from that owed the general public. *Id.* Plaintiffs do not address the negligence claims in their responsive documents and provide no authority to show that Defendants owed a duty under a recognized exception to the public duty doctrine. Summary judgment is Granted on the negligence claims.

## IV. CONCLUSION

Having reviewed Defendants' motion, the response and reply thereto, all attached exhibits and declarations, and the remainder of the record; the Court hereby finds and ORDERS:

(1) Defendants' motion for summary judgment (Dkt. # 12) is GRANTED in part and DENIED in part.

(2) Summary judgment is GRANTED for Plaintiffs' invasion of privacy claim under § 1983 and state law, and Plaintiffs' state law claims for negligent infliction of emotional distress and negligence.

(3) Summary judgment is DENIED for Plaintiffs' excessive force and failure to intervene claims under § 1983, and for Plaintiffs' state law assault, battery, and outrage claims.

(4) The Clerk is directed to send a copy of this order to *pro se* Plaintiffs Alfred and Linda Hernandez, and all counsel of record.

Dated this 15 day of January 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE